# **EXHIBIT A**

LEXSEE 1998 DEL. CH. LEXIS 97

CANTOR FITZGERALD, L.P., Plaintiff, v. IRIS CANTOR, Individually, and as De Facto Trustee of the CANTOR FAMILY TRUST, and IRIS CANTOR as Trustee of the MICHELLE LABOZZETTA TRUST, IRIS CANTOR as Trustee of the SUZANNE FISHER TRUST, IRIS CANTOR as Trustee of the HOWARD LUTNICK TRUST, IRIS CANTOR as Trustee of the STUART FRASER TRUST, IRIS CANTOR as Trustee of the MONICA MUHART TRUST, and IRIS CANTOR as Trustee of the RANDI ROSS TRUST, CANTOR FITZGERALD INCORPORATED, RODNEY FISHER, MARKET DATA CORPORATION AND CHICAGO BOARD BROKERAGE, L.L.C., Defendants.

C.A. No. 16297

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

*1998 Del. Ch. LEXIS 97*

June 3, 1998, Submitted
June 16, 1998, Decided

**SUBSEQUENT HISTORY:** [*1]

Released for Publication by the Court June 19, 1998.

**DISPOSITION:**

Plaintiff's Motion for Leave to File Amended Complaint is granted. Defendants' Motions to Dismiss the Amended Complaint/joint Motion for J.O.P. are granted, in part, and denied, in part. Decision on Plaintiff's Motion for a Preliminary Injunction is reserved until the record is supplemented on July 6-8, 1998.

**LexisNexis(R) Headnotes**

**COUNSEL:** Rodman Ward, Karen L. Valihura, Joseph M. Asher and George F. Fraley, III of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Delaware. OF COUNSEL: Thomas J. Schwarz and Jeremy A. Berman of Skadden, Arps, Slate, Meagher & Flom, New York, New York. Attorneys for Plaintiff.

Lawrence C. Ashby, Stephen E. Jenkins, Richard D. Heins and Richard I.G. Jones, Jr. of Ashby & Geddes, Wilmington, Delaware. OF COUNSEL: Jack C. Auspitz and Howard E. Heiss of Morrison & Foerster, New York, New York; Steven M. Weinberg of Weinberg Sullivan, Phoenix, Arizona; Barry I. Slotnick, J. Lawrence Crocker and Joshua T. Rabinowitz of Slotnick Shapiro & Crocker, New York, New York; David F. Dobbins and Saul B. Shapiro of Patterson, Belknap, Webb & Tyler, New York, New York. Attorneys for Defendants Iris Cantor, Cantor Fitzgerald Incorporated, [*2] Rodney Fisher and Market Data Corporation.

Martin P. Tully and William Lafferty of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. OF COUNEL: Josef J. Riemer, Ellen M. Moskowitz and Mark A. Racanelli of Kirkland & Ellis, New York, New York. Attorneys for Defendant Chicago Board Brokerage, L.L.C.

**JUDGES:** MYRON T. STEELE, V.C.

**OPINIONBY:** MYRON T. STEELE

**OPINION:**

*MEMORANDUM OPINION*

STEELE, V.C.

Cantor Fitzgerald, L.P. ("CFLP" or "Plaintiff"), a Delaware limited partnership, alleges that three of its limited partners, working through a Delaware corporation under their control and in conjunction with

an unassociated Delaware limited liability corporation, have developed a product that will compete directly with CFLP's core business. Plaintiff CFLP seeks a preliminary injunction against all five defendants to prevent the new product's launch on July 13, 1998. Plaintiff may obtain a preliminary injunction if it establishes the following three elements: (I) a reasonable likelihood of success on the merits, (2) imminent, irreparable harm will result if an injunction is not granted and (3) the damage to Plaintiff if the injunction does not issue will exceed the damage to the defendants if the injunction [*3] does issue. n1 Decision on the application for a Preliminary Injunction is reserved until the record may be supplemented on the issues of the existence of imminent, irreparable harm and whether the balance of the equities favors the issuance of the injunction.

n1 *Mills Acquisition Co. v. Macmillan, Inc., Del. Supr., 559 A.2d 1261, 1279 (1988).*

In the underlying Complaint, Plaintiff alleges breach of fiduciary duty, breach of contract and unjust enrichment claims against the three limited partners. It alleges aiding and abetting, tortious interference and unjust enrichment claims against the Delaware corporation and limited liability company. n2 Defendants have moved to dismiss all claims pursuant to Rule 1 2(b)(6) or for Judgment on the Pleadings pursuant to Rule 12(c). As to the fiduciary duty and contract claims, defendants' Motions to Dismiss and joint Motion for Judgment on the Pleadings are denied. As to the unjust enrichment claims, the Motions to Dismiss/joint Motion for Judgment on the Pleadings [*4] are granted with respect to the three limited partners and denied with respect to the Delaware corporation and limited liability company.

n2 At the parties' request, this Opinion does not address four additional counts of the Complaint.

BACKGROUND

Plaintiff CFLP is a leading inter-dealer and institutional broker of United States Treasury securities and other government securities. Three of the defendants in this action, Iris Cantor ("Cantor"), Rodney Fisher ("Fisher"), and Cantor Fitzgerald Incorporated ("CFI")(collectively "Limited Partner Defendants"), are Limited Partners in CFLP. Cantor, in addition to being a Limited Partner of CFLP, is also the Vice Chairman of CFLP and the owner n3 and CEO of CFI.

n3 Cantor owns CFI through the Iris Cantor Trust, of which Cantor is grantor, trustee and sole beneficiary.

Market Data Corporation [*5] ("MDC"), a fourth defendant in this action, is a Delaware corporation in the business of distributing financial data and of licensing software and technology for electronic trading systems. CFLP spun off MDC in 1987 in order to enhance the focus of MDC's business as a separate profit center. Cantor is majority shareholder of MDC n4, and Fisher is MDC's Chairman and CEO.

n4 Cantor is the majority shareholder of MDC through the Iris Cantor Trust.

The fifth defendant is Chicago Board Brokerage, L.L.C. ("CBB"), a Delaware limited liability company. CBB is a joint venture of Ceres Trading Limited Partnership, a limited partnership controlled by the Chicago Board of Trade, and Prebon Yamane, a broker/competitor of CFI. "CBB was formed to develop a new and more efficient way of brokering and trading Treasuries -- through an interactive electronic trading system.... " n5

n5 CBB's Memorandum of Law is Support of Its Motion to Dismiss the Complaint at 2-3 (hereafter "CBB's Open. Dismiss Br.").

[*6]

CFLP filed this action after CBB announced that, on July 13, 1998, it will launch a new electronic trading system called "MarketPower." CFLP contends the new system is intended to compete directly against CFLP in its "historic core business" -- the brokerage of U.S. Treasuries. CBB concedes that, through MarketPower, it "intends to bring full and fair competition to the Treasuries market," which is currently "dominated by plaintiff CFLP." n6 CBB developed the specifications for MarketPower and searched for approximately four years for a vendor to build the system. Ultimately, CBB chose MDC as its vendor because "it committed to develop the software on a timetable acceptable to CBB and because [it] could produce the software on acceptable financial terms." n7

n6 CBB's Open. Dismiss Br. at 3.

n7 CBB's Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction at 4 (hereafter "CBB's Opposing P.I. Br.").

Although CBB did not sign a formal contract with MDC until February 9, 1998, [*7] and did not announce the impending launch of MarketPower until March 19, 1998, CFLP learned from one of its employees that MDC was close to signing a contract with CBB to develop an electronic trading system at least as early as September of 1997. On October 6, 1997, CFLP sent a letter to Cantor, Fisher and MDC objecting to MDC's role as CBB's software vendor. CFLP claimed that the activity constituted a breach of the 1996 Agreement of Limited Partnership of Cantor Fitzgerald, L.P. ("1996 Limited Partnership Agreement" or "1996 Agreement"). CFLP knew that its warnings were going unheeded, however, in November of 1997, when a CFLP employee attended a high-profile, industry-wide, public demonstration of the MarketPower software that MDC built for CBB. Plaintiff did not initiate this action until April 6, 1998.

Plaintiff never expressed any concern directly to CBB about the propriety of using MDC as CBB's software vendor. Nevertheless, CBB learned of the allegations in CFLP's October 6, 1997, letter through MDC. Fisher assured CBB, however, as he had from the start of the companies' negotiations in June of 1997, that CFLP and MDC were separate companies and that CFLP's allegations were [*8] baseless. In fact, the Agreement Between Chicago Board Brokerage, L.L.C., and Market Data Corporation (the "CBB/MDC Software Licensing Agreement") provides that if CFLP ever materially interferes with MDC's participation in the CBB/MDC deal, MDC will be in material breach of the CBB/MDC Software Licensing Agreement, and CBB may terminate the agreement and look to its rights as stated in paragraphs 8.3 and 11.3. Thus, between October of 1997, and April of 1998, in reliance on MDC's assurances, CBB "made substantial commitments ... to prepare for the launch of MarketPower, including hiring more staff and undertaking the significant task of building a network to support the system." n8 Despite seeing caution flags waved, CBB intends to launch as scheduled, on July 13, 1998.

n8 CBB's Opposing P.1. Br. at 8.

collaborate with CBB to develop and sell a product intended to compete directly [*9] against CFLP in its "historic core business," breached a fiduciary duty of loyalty owed to CFLP and breached section 3.03(b) of the 1996 Limited Partnership Agreement Count III of the Complaint alleges that Cantor and CFI breached section 3.03(a) of the 1996 Agreement. Counts II and IV of the Complaint, respectively, allege that MDC and CBB, by collaborating on the development and sale of MarketPower, aided and abetted the Limited Partner Defendants' breach of their duty of loyalty and tortiously interfered with the 1996 Limited Partnership Agreement. Count V alleges a claim of unjust enrichment against all five defendants.

Shortly after filing the Complaint, CFLP filed a Motion for Preliminary Injunction to prevent the July 13, 1998, launch of MarketPower. CFLP contends that it has at least a reasonable likelihood of success on the merits, based on its interpretation of the 1996 Limited Partnership Agreement and based on Delaware's case law concerning the fiduciary duty of loyalty and accomplice liability. CFLP also contends that, if MarketPower is allowed to be released in July, CFLP will suffer irreparable harm in the form of, *inter alia,* loss of customers and of market share. [*10] Finally, CFLP argues that the harm it will suffer if the Court refuses to issue an injunction substantially outweighs the harm that defendants will suffer if the Court grants the injunction. All five defendants contest Plaintiff's arguments and oppose the Motion for Preliminary Injunction.

Fisher, MDC and CBB have filed Motions to Dismiss the Complaint for failure to state a claim. Because Cantor and CFI had already filed their Answer, they were prohibited from filing a Motion to Dismiss and instead filed a joint Motion for Judgment on the Pleadings ("J.O.P."). Rather than respond to the defendants' Motions to Dismiss/Motion for J.O.P. directly, CFLP filed a Motion for Leave to File Amended Complaint. CFLP contends that the proposed Amended Complaint has fixed any problems that may have existed in the original Complaint. As to the defendants who have not yet filed a responsive pleading, CFLP may amend the Complaint as of right. n9 However, with respect to Cantor and CFI, CFLP must obtain this Court's permission to file an Amended Complaint. n10

n9 Ct Ch. R. 15(a).

n10 Ct. Ch. R. 15(a). A party may also amend its complaint by written consent of the

[*11]

This Court liberally grants motions to amend "unless there is a showing of substantial prejudice or legal insufficiency" n11 Cantor and CFI oppose CFLP's Motion to Amend on the basis of legal insufficiency. The standard for assessing the legal sufficiency of a proposed Amended Complaint is the same standard applicable to a Motion to Dismiss. n12 Therefore the Court's decision on defendants' Motions to Dismiss, which follows, implicitly decides Plaintiff's motion to amend the Complaint as well.

n11 *Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc.*, 1996 Del. Ch. LEXIS 47, *8, Del. Ch., C.A. No. 13950, 1996 WL 189435 at *3, Allen, C. (Apr. 16, 1996).

n12 *Moore Business Forms, Inc. v. Cordant Holdings Corp.*, 1995 Del. Ch. LEXIS 155, *9, Del. Ch., C.A. No. 13911, 1995 WL 707877 at *2, Jacobs, V.C. (Nov. 30, 1995).

THE 1996 LIMITED PARTNERSHIP AGREEMENT

Section 3.03(b) of the 1996 Limited Partnership Agreement states:

"Each Partner acknowledges its duty of loyalty to the Partnership and agrees to take no action to harm (or that would reasonably [*12] be expected to harm) the Partnership or any Affiliated Entity."

The Limited Partner Defendants are "Partners," n13 and Plaintiff contends they are, as a result, bound by the terms of section 3.03(b). CFLP contends that the Limited Partner Defendants, by allowing MDC to contract with CBB to develop a product that will compete with CFLP in its core business, breached their fiduciary duty of loyalty to CFLP and took an action that would reasonably be expected to harm CFLP.

Section 3.03(a) states, in pertinent part:

"Nothing contained in this Agreement shall be deemed to preclude the Managing General Partner, CFI or any of their respective Affiliates from engaging or investing in or pursuing, directly or indirectly, any interest in other business ventures of every kind, nature or description independently or with others; *provided,* that such activities do not constitute Competitive Activities." n14

The 1996 Agreement states that "'Competitive Activity' shall have the meaning given in Section 11.04(c)." Section 11.04(c) states, in pertinent part:

"[A] Partner shall be considered to have engaged in a Competitive Activity if such Partner while a Partner...

(ii) [*13] solicits any of the customers of the Partnership or any Affiliated Entity (or any of their employees), induces such customers or their employees to reduce their volume of business with, terminate their relationship with or otherwise adversely affect their relationship with, the Partnership or any Affiliated Entity ...

(iv) directly or indirectly engages in, represents in any way, or is connected with, any Competing Business, directly competing with the business of the Partnership or of any Affiliated Entity, whether such engagement shall be as an officer, director, owner, employee, partner, consultant, affiliate or other participant in any Competing Business or

(v) assists others in engaging in any Competing Business in the manner described in the foregoing clause (iv)." n15

CFLP contends that the Limited Partner Defendants, by allowing or causing MDC to help CBB develop and sell MarketPower, have: (1) "solicit[ed] the customers of CFLP to reduce their volume of business with CFLP" in violation of section 11.04(c)(ii), (2) "directly engag[ed] in a Competing Business" in violation of section 11.04(c)(iv) and (3) "assist[ed] others in engaging in [a] Competing [*14] Business" in violation of section 11.04(c)(v). n16

n13 The 1996 Agreement of Limited Partnership of Cantor Fitzgerald, L.P., § 1.01 (hereafter "1996 Limited Partnership Agreement"), defines "Partner," in part, as "the General Partners and the Limited Partners."

n14 1996 Limited Partnership Agreement § 3.03(a) (italics in original). Cantor and MDC appear to be Affiliates of CFI. 1996 Limited Partnership Agreement § 1.01. (defining "Affiliate" as any person or entity "that directly or indirectly through one or more intermediaries

controls or is controlled by or is under common control with the specified [person or entity]").

n15 A Competing Business: "(i) involves the conduct of the wholesale or institutional brokerage business, (ii) consists of marketing, manipulating or distributing financial price information of a type supplied by the Partnership or any Affiliated Entity to information distribution services or (iii) competes with any other business conducted by the Partnership or any Affiliated Entity if such business was first engaged [in] by the Partnership or an Affiliated Entity...." 1996 Limited Partnership Agreement § 11.04(c). [*15]

n16 Plaintiff's Opening Brief in Support of Its Motion for Preliminary Injunction at 15. The quotation includes Rodney Fisher, but CFLP has apparently since conceded that § 3.03 (a) of the 1996 Agreement does not apply to Fisher.

* * *

This is the Court's decision on defendants' Motions to Dismiss and joint Motion for J.O.P.

DISCUSSION

A cause of action may be dismissed pursuant to Rule 12(b)(6) for failure to state a claim when, assuming the truth of all well-pleaded facts in the Complaint and construing all inferences to be drawn from those facts in the light most favorable to the non-moving party, the Court is convinced that there is no set of facts under which the plaintiff would be entitled to relief. n17 The Court may consider facts contained in documents incorporated into the complaint by reference when deciding a motion to dismiss. n18 The 1996 Limited Partnership Agreement and the CBB/MDC Software Licensing Agreement are incorporated by reference into CFLP's Amended Complaint.

n17 *Union Texas Petroleum Holdings, Inc. v. Travelers Indem. Co.*, 1998 Del. Ch. LEXIS 27, *10, Del. Ch., C.A. No. 15448, 1998 WL 83068 at *3, Chandler, C. (Feb. 19, 1998). [*16]

n18 See e.g., *In re Santa Fe Pacific Corp. Shareholder Litigation*, Del. Supr., 669 A.2d 59, 69-70 (1995)(considering joint and supplemental proxy statements on motion to dismiss disclosure action and suggesting appropriateness of considering underlying contract in action for its breach).

The legal standard applicable to a Motion for J.O.P. differs from the standard applicable to a Motion to Dismiss. Although the Court is still required to assume the truth of all well-pleaded facts in the Complaint and to construe all inferences to be drawn from those facts in the light most favorable to the non-moving party, just as on a motion to dismiss, "[a] motion for judgment on the pleadings may be granted only when no material issue of fact exists and the movant is entitled to judgment as a matter of law.'" n19

N19 *Desert Equities v. Morgan Stanley*, Del. Supr., 624 A.2d 1199, 1205 (1993).

Counts I and III of the [*17] Amended Complaint allege that the Limited Partner Defendants breached their duty of loyalty to CFLP and the 1996 Limited Partnership Agreement. The 1996 Agreement clearly states that all Limited Partners owe CFLP a duty of loyalty and agree to take no action that would reasonably be expected to harm CFLP. The Agreement also states that CFI and its Affiliates may not engage in Competitive Activities or Competing Businesses. The Amended Complaint alleges that the Limited Partner Defendants, while Limited Partners of CFLP, allowed MDC to contract with CBB to develop and sell a product that will compete directly against CFLP in its core business of brokering U.S. Treasuries. The underlying facts, stated in the Amended Complaint, if true, would seem to support an inference of (a) a breach of the Limited Partners' duty of loyalty, (b) harm to CFLP, (c) a Competitive Activity and (d) a Competing Business.

The Limited Partner Defendants contend, among other arguments, that regardless of the 1996 Limited Partnership Agreement's terms, n20 they have earned the right to allow or cause MDC to compete with CFLP through a prior course of dealing. They contend that since 1993, the year CFLP first [*18] inserted the language currently found in sections 3.03(a), 3.03(b) and 11.04(c) of the 1996 Agreement, MDC has completed, or has proposed and negotiated, many transactions with CFLP's competitors that would arguably constitute Competitive Activities or Competing Businesses, or that might arguably be considered a violation of the Limited Partner Defendants' duty of loyalty and harmful to CFLP. Defendants contend that Plaintiff never objected to, or sought to enjoin, these dealings, notwithstanding that some allegedly involved the development of electronic

trading systems for companies that compete directly with CFLP in the fields of mortgage-backed securities and emerging markets, as well as in CFLP's core business of U.S. Treasuries.

> n20 The Limited Partner Defendants also contend that the 1996 Agreement, when considered in the context of its drafting history, permits them to take precisely the actions CFLP complains of in this action. This argument is more appropriately considered next month, when the record concerning all three elements of the Preliminary Injunction standard is complete.

[*19]

The Limited Partner Defendants may prevail on their theory after a full trial on the merits. On the very limited record before me, however, and construing all reasonable inferences in the light most favorable to CFLP, I cannot say with certainty that there is no set of facts under which CFLP would be entitled to relief. Thus, Fisher's Motion to Dismiss Counts I and III is denied. Similarly, whether Cantor and CFI may allow or cause MDC to compete with CFLP, despite the terms of the 1996 Agreement, because of the parties' prior course of dealing is a disputed material fact that precludes this Court from entering judgment on the pleadings. Cantor's and CFI's joint Motion for J.O.P. on counts I and III is denied.

Counts II and IV raise accomplice liability theories against MDC and CBB. Count II is a claim for aiding and abetting the Limited Partner Defendants' breach of fiduciary duty, and Count IV is a claim for tortiously interfering with the 1996 Limited Partnership Agreement. The elements of aiding and abetting a breach of fiduciary duty are: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty and (3) a knowing participation in the breach by the [*20] non-fiduciary defendant. n21 The elements of tortious interference are: (1) a contract, (2) defendant's knowledge of the contract, (3) an intentional act that is a significant factor in causing the breach of the contract, (4) lack of justification and (5) injury. n22

> n21 *Carlton Investments v. TLC Beatrice Int'l Holdings, Inc.*, 1995 Del. Ch. LEXIS 140, *49, Del. Ch., C.A. No. 13950, 1995 WL 694397 at *15, Allen, C. (1995).
>
> n22 See *CPM Indus. v. Fayda Chems. & Minerals, Inc.*, 1997 Del. Ch. LEXIS 175, *22, Del. Ch., C.A. No. 15996, 1997 WL 770683 at *7, Jacobs, V.C. (Nov. 26, 1997).

A common basis for dismissing accomplice liability theories under Rule 12(b)(6) is that Plaintiff has stated no underlying claim for principal liability. As I have explained, however, the Amended Complaint does state a claim for breach of the duty of loyalty expressly inserted in the 1996 Limited Partnership Agreement. Defendants contend, nevertheless, that Counts II and IV must be dismissed because Plaintiff has stated no facts to support the elements of knowing participation [*21] or of intentional action without justification. I disagree. Plaintiff has pleaded sufficient facts to support these elements of its respective claims.

Plaintiff alleges that MDC and CBB agreed to work together to develop and sell a product that would compete directly with Plaintiff's core business. It alleges that the product is operable and is set to launch on July 13, 1998. Certain Defendants admit in their pleadings that customers are currently being solicited to use the product. MDC received a letter explaining that such a relationship/product would constitute a breach of the Limited Partner Defendants' duty of loyalty found in the 1996 Limited Partnership Agreement. Plaintiff has alleged that MDC shared this information with CBB and that, in response, CBB required MDC to agree to indemnify CBB in the event that Plaintiff should obtain "against MDC any final and unappealable permanent injunction, court order or settlement of any litigation. . ." n23

> n23 Agreement Between Chicago Board Brokerage, L.L.C., and Market Data Corporation §§ 2.9, 8.3, 11.3.

[*22]

Under these circumstances, the Court may infer that MDC and CBB had reason to believe that developing and marketing MarketPower may constitute a breach of the Limited Partner Defendants' duty of loyalty found in the 1996 Limited Partnership Agreement. The Court may further infer that MDC's and CBB's continued development and marketing of MarketPower in the face of their knowledge lacked justification. Accordingly, defendants' Motions to Dismiss Counts II and IV are denied.

Finally, all five defendants have moved to dismiss Count V, which alleges a cause of action for unjust enrichment. Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." n24 The elements of unjust enrichment have also been stated in

this way: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law. n25

n24 *Fleer Corp. v. Topps Chewing Gum, Inc.*, Del. Supr., 539 A.2d 1060, 1062 (1988). [*23]

n25 *Khoury Factory Outlets, Inc. v. Snyder*, Del. Ch., C.A. No. 11,568, 1996 WL 74725 at *11, Kiger, M. (Jan. 8, 1996).

The Limited Partner Defendants argue that a cause of action for unjust enrichment does not lie when a contract determines the obligations between the parties. n26 However, the Amended Complaint specifically states: "In the alternative, and/or with respect to conduct *not governed by the existence of an express contract,* CFLP seeks the equitable remedy of unjust enrichment." n27 Thus, unless and until this Court determines that the defendants' obligations are governed exclusively by contract, Plaintiff has properly stated a claim for unjust enrichment.

n26 See *ID Biomedical Corp. v. TM Techs., Inc.*, 1995 Del. Ch. LEXIS 34, *39, Del. Ch., C.A. No. 13269, 1995 WL 130743 at *15, Steele, V.C. (Mar. 16, 1995), for a discussion of this principle.

n27 Proposed Amended Complaint P 113 (emphasis added).

I do, however, [*24] find that the claims against the Limited Partner Defendants are governed exclusively by contract and that, as to them, the Motions to Dismiss/joint Motion for J.O.P. must be granted with respect to Count V. Whether or not there is an implied duty of loyalty which applies to limited partners generally and prohibits the conduct complained of here is not an issue. Here, by contract, within the 1996 Limited Partnership Agreement, the parties accepted the invitation of *6 Del. C. § 17-1101(d)* to address fiduciary duties. The 1996 Agreement is certainly not silent on the subject. Therefore, it may be fairly assumed that the parties intended the nature and scope of the fiduciary duties owed, by whom to whom, to be addressed within the language adopted by them in their own freely-fashioned agreement. This Court repeatedly has emphasized that Delaware law favors allowing parties to an agreement to pursue their own aims so long as no underlying fraud or innocent misrepresentation taints the crafting of the language actually adopted. n28 This is consistent with the policy of the General Assembly expressed in *6 Del. C. § 17-1101(c)*.

n28 See, e.g., *In re Cencom Cable Income Partners, L.P. Litig.*, 1997 Del. Ch. LEXIS 146, *14, Del. Ch., C.A. No. 14634, 1997 WL 666970 at *4, Steele, V.C. (Oct. 15, 1997); *In re Cencom Cable Income Partners, L.P. Litig.*, 1996 Del. Ch. LEXIS 17, *10, Del. Ch., C.A. No. 14634, 1996 WL 74726 at *4-5, Steele, V.C. (Feb. 15, 1996).

[*25]
Cantor's and CFI's joint Motion for J.O.P. with respect to Count V is granted. Fisher's Motion to Dismiss Count V is granted.

The claims against CBB and MDC are not governed by any contract with CFLP. The Amended Complaint states a claim that survives CBB's and MDC's Motions to Dismiss. Plaintiff repeatedly alleges that, if MarketPower is a success, defendants will be enriched, and Plaintiff will be impoverished. Plaintiff also alleges that neither defendant can retain any benefit resulting from the success of MarketPower "justifiably" or in accordance with "the fundamental principles of justice or equity and good conscience," because they knew that Cantor, Fisher, and CFI were prohibited from producing a product that would compete with Plaintiff's core business. Assuming the truth of these facts, as I must at this stage, I find that Plaintiff has stated a claim that survives CBB's and MDC's Motions to Dismiss. CBB's and MDC's Motion to Dismiss Count V is denied.

CONCLUSION

Plaintiff's Motion for Leave to File Amended Complaint is *granted*. Defendants' Motions to Dismiss the Amended Complaint/joint Motion for J.O.P. are *granted, in part, and denied, in part*. Decision on [*26] Plaintiff's Motion for a Preliminary Injunction is *reserved* until the record is supplemented, on July 6-8, 1998, on the issues of the existence of imminent, irreparable harm and whether the balance of the equities favors the issuance of the injunction.

IT IS SO ORDERED.

MYTON T. STEELE

Vice Chancellor